IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 22-cv-02672-CNS-MEH

FUTURE LEGENDS, LLC, a Nevada limited liability company,

    Plaintiff,

v.

QUALITE SPORTS LIGHTING, LLC, a Delaware limited liability company,
QUALITE SPORTS LIGHTING, LLC, a Colorado limited liability company,
WORTH HOLDINGS, LLC, a Delaware limited liability company,
WORTH INVESTMENT GROUP, LLC, a Delaware limited liability company, and
WORTH CAPITAL LLC, a Michigan limited liability company,

    Defendants.

## ORDER

Defendants move for partial summary judgment on Plaintiff's second, third, fourth, and sixth causes of action. ECF No. 90. For the following reasons, the Court grants in part and denies in part Defendants' motion.

    **I.    BACKGROUND AND UNDISPUTED MATERIAL FACTS**

    **A.    The Parties**

Plaintiff Future Legends, LLC is a company created to build a sports facility that provides youth and professional fields, retail, and dormitory spaces in Windsor, Colorado. ECF No. 90. Defendant Qualite Sports Lighting, LLC is a manufacturer and installer of sports lighting installations offering design and engineering, production, and construction

1

installation services. *Id.* Qualite is a Delaware-based company that is wholly owned and managed by three holding companies: Defendants Worth Capital, Worth Investment Group, and Worth Holdings. *Id.*

### B.      The Agreement

On August 10, 2020, Future Legends alleges that it and Qualite entered into a Trade Contractor Agreement (the Agreement) where Qualite agreed to design and construct the lighting system for the Future Legends Sports Park. *Id.* at 9; ECF No. 90-1 (Trade Contractor Agreement).[1] The parties defined their relationship as follows:

> 2.1 PARTIES' RELATIONSHIP The Parties agree to proceed with this Agreement on the basis of mutual trust, good faith, and fair dealing and shall cooperate with each other and with Construction Manager in furthering Owner's interests. Trade Contractor shall use its diligent efforts to perform the Trade Contract Work in an expeditious manner consistent with the Trade Contract Documents. The Parties will endeavor to promote harmony and cooperation among all Project Participants.

ECF No. 90-1.[2] Qualite's general responsibilities and obligations are outlined in Section 3.1 of the Agreement:

> 3.1.1 RESPONSIBILITIES Trade Contractor shall provide all of the labor, materials, equipment, and services necessary to complete the Trade Contract Work, all of which shall be provided in full accord with or as reasonably inferable from the Trade Contract Documents as being necessary to produce the indicated results.

---

[1] As explained in more detail below, Defendants previously, and apparently continue to, deny the validity and enforceability of the Agreement.

[2] The Agreement defines the "Owner" as Future Legends, the "Trade Contractor" as Qualite Sports Lighting LLC, the "Construction Manager" as Hensel Phelps Construction Co., and the "Project" as Future Legends Sports Park. ECF No. 90-1 at 2.

2

> 3.1.2 Trade Contractor shall be responsible for the supervision and coordination of the Trade Contract Work, including the construction means, methods, techniques, sequences, and procedures utilized.
>
> 3.1.3 Trade Contractor shall perform Trade Contract Work only within locations allowed by the Trade Contract Documents, applicable permits, and applicable local law.

*Id.* In general, Future Legends had the authority to control the schedule of the construction, subject to certain exceptions:

> 6.2 CONSTRUCTION SCHEDULE Trade Contractor shall promptly furnish Construction Manager on an ongoing basis with any scheduling information requested by Construction Manager for the Trade Contract Work. In consultation with Trade Contractor, Construction Manager shall incorporate the Trade Contract Work and work of other trade contractors into an overall Construction Schedule for the entire Project. Trade Contractor shall be bound by the Construction Schedule, provided, however, that nothing in this Trade Contractor Agreement shall relieve Trade Contractor of any liability for any unexcused failure to comply with its original schedule or any completion dates. The Construction Schedule and all subsequent changes and additional details shall be submitted to Trade Contractor promptly and reasonably in advance of the required performance. Owner, or through its designated representative, shall have the right to determine, and if necessary, make reasonable changes to the time, order, and priority in which the various portions of the Trade Contract Work and the other work associated with the Project shall be performed. To the extent such changes increase Trade Contractor's costs or time, the Trade Contract Price or Trade Contract Time shall be equitably adjusted.

*Id.*

### C. The Dispute

Future Legends alleges that the Construction Schedule obligated Qualite to complete the following work by the following deadline: (a) complete lighting for fields 1, 4,

10, and 11 by February 2021; (b) complete lighting for fields 2, 3, 6, 9, 17, 18, 19, and 20 by April 2021; and (c) complete the lighting for fields 12, 13, 14, 15, and 16 by July 2021. ECF No. 4, ¶ 21. As of the filing of the complaint in this case, Future Legends alleges that Qualite only completed Fields 10 and 11 and part of the west parking lot. *Id.*, ¶ 22. Future Legends also alleges that Qualite failed to meet several other requirements under the Agreement, including obtaining proper permits, providing information to Future Legends, and properly installing certain lighting systems. *Id.*, ¶¶ 23–26. As a result, on May 23, 2022, Future Legends sent Qualite a Notice to Cure Default pursuant to the parties' Agreement. *Id.*, ¶ 31. Then, on June 1, 2022, Future Legends sent Qualite a Notice of Intent to Terminate, *id.*, ¶ 32, and on August 2, 2022, Future Legends sent the Notice of Termination. *Id.*, ¶ 34. Future Legends then filed its complaint on September 16, 2022, asserting seven claims against Defendants.

In its first claim for relief—breach of contract against Qualite—Future Legends alleges that Qualite materially breached the Agreement in several ways, including by (i) failing to design a lighting system to meet the requirements of the Agreement and the applicable federal, state, and local codes; (ii) failing to obtain the necessary permits for the work; (iii) failing to adhere to the Construction Schedule; and (iv) failing to install the underground electrical wiring. *Id.*, ¶¶ 37–45.

In Count II—breach of the covenant of good faith and fair dealing against Qualite—Future Legends alleges that (i) Qualite knew that it could not perform its scope of work in accordance with the Agreement, (ii) Qualite failed to provide requested information, (iii)

Qualite permitted delays in performance to continue, and (iv) Qualite accepted payment for work Qualite knew it would not finish. *Id.*, ¶¶ 46–53.

In Count III, Future Legends alleges that Qualite acted negligently in performing its work on the project such as failing to properly install the underground electrical wiring and failing to safely design the lighting system. *Id.*, ¶¶ 54–62. In Count IV, Future Legends alleges that Qualite was unjustly enriched by accepting payment of $654,507.00, despite not performing a substantial amount of the agreed upon work. *Id.*, ¶¶ 63–68.

Future Legends' fifth claim for relief relates to a lien that Qualite placed on the project on July 22, 2022, for $463,000. *Id.*, ¶¶ 69–75. For relief for claim five, Future Legends asks the Court to declare that the lien was excessive. *Id.* Finally, in its sixth claim for relief—negligent misrepresentation against Qualite and the Worth Defendants—Future Legends alleges that Defendants negligently misrepresented the work Qualite could perform. *Id.*, ¶¶ 76–82.[3]

## II.   LEGAL STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003); Fed. R. Civ. P. 56(a). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227,

---

[3] Future Legends also brought a promissory estoppel claim against Worth, alleging that Worth should be estopped for certain promises Worth made "leading up to the execution of the Contract." ECF No. 4, ¶¶ 83–90. The Court dismissed this claim against Worth. ECF No. 33.

1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### III.     ANALYSIS

Defendants move for partial summary judgment on Counts II, III, IV, and VI. ECF No. 90. The Court addresses each in turn.

### A.     Count II (Breach of the Covenant of Good Faith and Fair Dealing Asserted Against Qualite)

"Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo.1995). The duty arises when one party to a contract "has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *See ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007) (citing *Amoco Oil*, 908 P.2d at 498). Thus, the "covenant of good faith and fair dealing is breached when a party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *Id*. Courts require a plaintiff to show that "the manner of performance under a *specific contract term* allows for discretion on the part of either party." *Amoco Oil*, 908 P.2d at 498 (emphasis added); *Rocky Mountain Chocolate Factory, Inc. v. SDMS, Inc.*, No. 06-CV-1212-WYD-BNB, 2007 WL 4268962, at *6 (D. Colo. Nov. 30, 2007) (granting

summary judgment because the counterclaimant "did not allege that [the counterclaim defendant] breached any specific contract term that allowed for discretion").

Defendants argue that the Agreement does not provide Qualite with any discretion regarding the manner or time of performance. ECF No. 90 at 13–14. But as the Court already found in rejecting this argument at the motion to dismiss stage, certain provisions of the Agreement plainly confer discretion. Section 3.1.2, for example, provides that Qualite shall be responsible for the supervision and coordination of the project work, "including the construction means, methods, techniques, sequences, and procedures utilized." Future Legends alleges that Qualite breached this provision, among others, by "knowingly allow[ing] delays to continue and mak[ing] no effort to cooperate to rectify the situation." ECF No. 4, ¶ 50. The Court thus rejects Defendants' argument that the "Agreement repeatedly does not provide Qualite with any discretion regarding the manner or time of performance under the Agreement." ECF No. 90 at 14.

Accordingly, the Court denies Defendants' motion for summary judgment with respect to Count II.

### B.   Count III (Negligence Asserted Against Qualite)

Defendants argue that the economic loss rule bars Future Legends' negligence claim. ECF No. 90 at 15–18. Future Legends contends that the economic loss rule does not prevent it from asserting a negligence claim in the alternative because "Defendants have yet to admit the validity of the Contract." ECF No. 108 at 9.

In Colorado, the economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim

for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). The purpose of the rule is to "maintain a distinction between contract and tort law." *Id.* at 1262. "To decide whether the economic loss rule bars a tort claim, courts must first determine the source of the duty at issue." *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1161 (Colo. 2019) (Gabriel, J., dissenting) (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004)).

The Court finds that the economic loss rule plainly bars Future Legends' negligence claim.[4] Future Legends makes no attempt to identify any source of duty other than the Agreement. *See BRW*, 99 P.3d at 72 ("tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property" whereas "'[c]ontract law is intended to enforce the expectancy interests created by the parties' promises so that they can allocate risks and costs during their bargaining'" (citing and quoting *Town of Alma,* 10 P.3d at 1264)); *see also Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1270 (Colo. 2000) (absent the duties imposed by the contractual relationship between the parties, the defendants owed no independent duty of care to the plaintiffs, and thus the "economic loss rule bars [the plaintiffs'] negligence claim in this case because the [plaintiffs] have alleged the breach of contractual duties only resulting in purely economic loss"). Future Legends even identified the Agreement as the source of Defendants' duty. ECF No. 4, ¶ 61 ("Qualite breached its duty of care by failing to

---

[4] To avoid any doubt, Future Legends' alleged losses are purely economic; it does not allege any physical harm or damage to its personal property or any other damages. *See* ECF No. 4 at 8–9.

design the Lighting System sufficient to meet the requirements of *the Contract* and applicable code." (emphasis added)).

Although Future Legends is correct that it may plead claims in the alternative, *see* Fed. R. Civ. P. 8(d)(2), it failed to cite any case that permitted a negligence claim to proceed alongside a breach of contract claim where the conduct alleged relates solely to the contractual relationship.[5] Future Legends has thus failed to satisfy its burden, and the Court grants Defendants' summary judgment with respect to Count III.

### C. Count IV (Unjust Enrichment Asserted Against Qualite)

Defendants argue that Future Legends' unjust enrichment claim cannot proceed because all parties have acknowledged the existence of an express agreement governing the relationship. ECF No. 90 at 18. Future Legends argues in response that, because Defendants have not admitted to the validity of the Agreement, it is permitted to proceed with its unjust enrichment claim in the alternative. ECF No. 108 at 9.

"Unjust enrichment is a claim in quasi-contract based on principles of restitution." *W. Ridge Grp., LLC v. First Tr. Co. of Onaga*, 414 F. App'x 112, 120 (10th Cir. 2011)

---

[5] To be sure, Future Legends provided authority where courts permitted quasi-contract and breach of contract claims to proceed where the enforceability of the contract had yet to be decided. *See SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1092 (D. Colo. 2013) ("[A] party is permitted to pursue a claim for breach of contract and promissory estoppel in the alternative."); *Robert W. Thomas & Anne McDonald Thomas Revocable Trust v. Inland Pacific Colo., LLC*, 11-cv-03333-WYD-KLM, 2012 WL 2190852, at *5 (D. Colo. June 14, 2012) (permitting plaintiff to plead breach of contract and unjust enrichment claims in the alternative); *Starland v. Fusari*, 2013 WL 12149123, at *7 (D.N.J. Nov. 15, 2013) (denying summary judgment on plaintiff's unjust enrichment and breach of contract claims); *see also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 535 (9th Cir. 2016) (at summary judgment, "unjust enrichment claims may be pleaded in the alternative in quasi-contract"); *Becker v. HSA/Wexford Bancgroup, L.L.C.*, 157 F. Supp. 2d 1243, 1253 (D. Utah 2001) (denying summary judgment because the plaintiff's "contract law and quasi-contract law claims are plead *in the alternative*; until a jury determines whether there was or was not a binding contract between the parties, it would be premature to dismiss the [plaintiff's] quasi-contract claims"). But of course, a negligence claim is not a quasi-contract claim—it is a tort claim. Thus, Future Legends' blanket argument is unpersuasive for this claim.

(applying Colorado Law and citing *DCB Constr. Co. v. Central City Dev. Co.,* 965 P.2d 115, 118 (Colo.1998) (en banc)). "It is a remedy designed for circumstances in which other remedies are unavailable. As such, it is not available as a mere alternative legal theory when the subject is covered by an express contract." *Id.* (citing *Interbank Invs., LLC v. Eagle River Water & San. Dist.,* 77 P.3d 814, 819 (Colo. App. 2003)). However, a party "can recover on a quasi-contract when the party 'will have no right under an enforceable contract.'" *Interbank*, 77 P.3d at 816 (quoting *Backus v. Apishapa Land & Cattle Co.*, 615 P.2d 42, 44 (Colo. App. 1980)).

Here, the Court has already addressed this argument in denying Defendants' motion to dismiss Future Legends' unjust enrichment claim. The Court explained at the hearing that it would dismiss this claim if Defendants "admit that the contract was valid and enforceable." The Court advised the parties to work on such a stipulation and then notify the Court once a stipulation has been reached. But no stipulation has been reached.

It follows that Future Legends' unjust enrichment claim falls within the narrow exception explained above—that a party can recover on a quasi-contract claim when the party will have no right under a contract. *Interbank*, 77 P.3d at 816; *see also Robert W. Thomas & Anne McDonald Thomas Revocable Tr. v. Inland Pac. Colorado, LLC*, No. 11-CV-03333-WYD-KLM, 2012 WL 2190852, at *4–5 (D. Colo. June 14, 2012) (finding that this exception applies where the defendants argued that "the contract is not enforceable because Defendants were fraudulently induc[]ed into entering it"). Because Defendants continue to challenge the validity and enforceability of the Agreement, the Court finds that Future Legends is entitled to pursue this claim in the alternative. *See* Fed. R. Civ. P.

10

8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); *see also Clark v. Green Tree Servicing LLC*, 69 F. Supp. 3d 1203, 1222 (D. Colo. 2014) ("Under the Federal Rules of Civil Procedure, Ms. Clark may plead a breach of contract claim and a promissory estoppel claim based on the same conduct or document in the alternative, although she may not ultimately prevail on both claims.").

Accordingly, Defendants' motion for summary judgment with respect to Count IV is denied.

### D.  Count VI (Negligent Misrepresentation Asserted Against Qualite and Worth)

Like Future Legends' negligence claim, Defendants argue that the economic loss rule bars Future Legends' negligent misrepresentation claim. ECF No. 90 at 22–27. Future Legends contends that the economic loss rule does not apply because this claim relates to Defendants' pre-contract alleged misrepresentations. ECF No. 108 at 12. The Court agrees with Future Legends.

To prevail on a negligent misrepresentation claim, a plaintiff must prove that (1) the defendant supplied false information in a business transaction; (2) the defendant failed to exercise reasonable care or competence in obtaining or communicating that information; and (3) the plaintiff justifiably relied upon the false information. *Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 477 (Colo. App. 2008). Defendants do not challenge the adequacy of Future Legends' pleadings or suggest that there is no evidence to support this claim. They instead rely solely on their economic loss rule argument.

But generally, the economic loss rule "does not apply to claims arising from a defendant's pre-contractual conduct because, at that time, there was no contract that could have subsumed identical tort duties." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 120 (Colo. App. 2021) (citations omitted); *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 607 (Colo. 2016) (holding that the economic loss rule does not bar claims "based on misrepresentations made prior to the formation of the contracts, which [the plaintiff] alleges induced him to enter into the contracts and therefore violated an independent duty in tort to refrain from such conduct"). Here, Future Legends has alleged that Worth and Qualite made negligent misrepresentations *prior to* entering into the Agreement with the goal of inducing Future Legends to enter the Agreement. ECF No. 4, ¶¶ 77–81. The economic loss rule thus does not apply under these specific circumstances.

Accordingly, Defendants' motion for summary judgment with respect to Count VI is denied.

## IV.   CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion for summary judgment with respect to Future Legends' negligence claim but denies it with respect to the other three claims.

DATED this 21st day of August 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge